Verizon cell phone store in Hartford, Wisconsin on April 4th, 2014. At the time that robbery took place, there was a telephone call made to law enforcement. Law enforcement responded, and an employee and a customer of the Verizon store described, number one, what had happened within the confines of the store. They described the perpetrator of the armed robbery as a skinny, young African-American person. And they also told law enforcement that at or about the time of the robbery, they had observed a tan Mercedes-Benz automobile in a parking lot at the front of the Verizon store. They also told the officer that that tan Mercedes then, at some point, went to the back of the store. The robber, when exiting the store, went out the back door of the store, turns to the left, and has no interaction between the robber and the tan Mercedes vehicle. You said they see, you mean the two employees? There's an employee and a customer, yes. Okay, and they're the ones that saw these people. Yes. Were they suspicious? Well, each of, to paraphrase, their position was they thought that the people in the Mercedes, when parked in front of the store, were watching the interior of the store. And then they found it curious that that car ended up at the back of the store in proximity with the robber. They were suspicious enough that they noted the license plate number of the vehicle, some tape on a bumper of the vehicle, and obviously the make and color of the car. Law enforcement, having received that information from the two individuals, put out a radio broadcast, and within moments another law enforcement officer sees the vehicle on the highway, gets behind it, notifies his cohorts that he is tailing the car. A stop of the car is made by law enforcement. Multiple squads are involved. The occupants of the vehicle, Mr. Howard being one of them and a female being the other, are ordered out of the car, ordered to get down and spread Eagle on the ground, and at that point are being covered or watched over by law enforcement with their weapons drawn. At some point, a superior officer, not on the scene, orders the officers who have these people in their custody to take them from the scene where the stop occurred to the local police department. So they are removed from the situs of the stop. The officers do not at any point question them in terms of what were you doing by the store. There are no indicia consistent with what is commonly referred to as a Terry stop. That is, explain why you're in the area, what you're doing, what's going on. None of that conversation takes place. They are handcuffed, they are put in separate squads, and they are taken to a local jail, police department. The court determined they were under arrest. Pardon? The court determined that they were under arrest. Yes. And that gets us to the order of Judge Clevert, which in one instance says that there was probable cause for the arrest out on the highway, despite the fact that law enforcement searched the vehicle, found absolutely nothing tying it to the Verizon store. That is, no phones, none of the things that people describe. But Judge Clevert says there was probable cause because the customer and the employee saw the car, thought it was suspicious, and it was at least in the back of the store where the robber had exited, even though there's no evidence of any connection. And then Judge Clevert says the fact that it sped away at a high rate of speed was indicative of something that he decided was probable cause. In his order, the judge then spends a fair amount of time talking about a statement obtained from my client the following day and makes a finding that that statement is so attenuated that any failing or problem with the original arrest doesn't matter. Judge Clevert also finds that he is not going to consider inevitability because he's already decided there's probable cause. When were they given any warning? I'm sorry? Miranda warning. They were not given any Miranda warnings until after they were at the police department. Okay. And relative to the statement that you just cited? Well, there are two statements. There are statements obtained by law enforcement on the day of the arrest, within hours of the arrest. The statement Judge Clevert is talking about is taken the following day or made the following day as a consequence of a call from my client, an advisor by my client of law enforcement, that he wanted to talk to the detective he had seen the day before. So it's a situation wherein, from the appellant's point of view, this court reviews probable cause determinations de novo. It's our position that at the point the persons are pulled over, taken forcibly or forced out of the vehicle, handcuffed, put in squads, there is no probable cause that they participated in the robbery of the Verizon store. The government has cited a host of cases where people are removed from cars, but as set forth in our reply brief, in each and every instance, there is some fact that connects the people in the car with the illegal activity. In this case, there was none. The government has also talked about inevitability. And this is an interesting case because while Judge Clevert said there was probable cause for the arrest, the magistrate judge, and I understand we're not here to review,  but the magistrate judge found that there was not probable cause and proceeded to determine that the evidence would have been discovered inevitably. We take the position that the government's argument about inevitability is not applicable. You can't do that, particularly, and I use the example of a cell phone taken from my client. If there hadn't been the illegal unlawful taking of him out on the highway, the phone would not have been available to law enforcement, and maybe down the road they would have found out he's involved in other offenses. But the phone wouldn't have been there. You can't guarantee that the content or what's on the phone will remain the same sometime later. It's only by virtue of the fact that they were able to maintain him in custody, that they were able at a later point, and we could have an argument about whether they exceeded the limits of the consent given by my client or not, but the fact is they obtained a great deal of information off my client's phone, which they would not have had but for the illegal intrusion at the point of the stop on the highway. Unless there are questions, thank you very much. Thank you, Mr. Coffey. Mr. Tableson. May it please the court, my name is Benjamin Tableson, and I represent the United States. There was probable cause to arrest the appellant, Devon Howard, as an aider and abettor of the gunman in this case, not as the gunman, as his accomplice. The witnesses here saw Mr. Howard acting as a lookout. They found that so remarkable, they took down his license plate, the make of his car, the color of his car, tape on the bumper of his car, the number of occupants in his car. After the robbery, they called the police. They described those things to the police, and they said before the robbery, we saw him staring for an extended period at the store. Right before the gunman burst in, he pulled around behind the store, and then after the robbery, I believe the finding by the district court was that the appellant had zoomed off in one direction while the gunman went in another. At that point, when they called 911 or whatever they did, when did the word decoy come up? I believe that, I'm not sure, Your Honor. The witnesses did say at some point they believed that it was possible that Mr. Howard was acting as a decoy or a lookout, I believe. There wasn't an immediate response when they called. They thought those people might be a decoy. I believe he said they were involved. I don't remember precisely the word. The only reason I say that is because, in hindsight at least, one could say that they went through all of that and then zoomed off to pretend at least he got in that car with the phones. It's very possible, although I believe the witnesses said that they did not believe that they saw the gunman get into this car. Okay. I'm sorry. I mean, that's what they maybe wanted him to think. Yeah, maybe that's right. I'm just guessing here because obviously he went one way, they went the other, and that doesn't make any sense unless there's some reason why they would leave when he exited the place and they left in a hurry. This is a strange set of facts, that's all. And he's robbing phones. He didn't want their money. Interesting. Well, that's it. So it appeared to the witnesses that the appellant here had acted in concert with the gunman. That was certainly the finding by the district court. I do think, per Your Honor's observation, it is not inconsistent with the witnesses' statements to police that when the appellant was pulled over a few minutes, only a few minutes after this call, that the gunman was not in the car, that the gun was not in the car, and that the phones were not in the car. That's not an inconsistent fact with the conclusion that there was probable cause to arrest the appellant as an aider and abettor. It would be if our assertion was that he was the gunman or that the district court's finding was that he's the gunman. But it makes sense if the witnesses didn't see the gunman get into the car, the gunman wouldn't be in the car. If anything, that's consistent. It's the government's position that this court's cases in Shaftesbury and Leung are extremely similar to this case in that because there's probable cause, that should be the end of the appeal. If this court determines that there is no probable cause, there is no evidence that should be suppressed here because there are many overlapping layers of inevitable discovery, first, Mr. Howard's co-lookout, Ms. Bean, was also arrested, confessed, and identified him. And because her Fourth Amendment rights are personal rights, he may not assert them. He cannot suppress her statements. And once she identified him, police would have searched his house and found all the evidence he wishes to suppress inevitably. Also true that Mr. Howard made inculpatory statements the day after his arrest, and under the factors set out in Brown, the link between his statements on the 5th and his arrest on the 4th is so attenuated as to purge any taint that may exist from the arrest. He was Mirandized before making any statements, to answer your question from before, Your Honor. A full day had passed. There was a significant intervening event between the arrest and his statement, which is to say he volunteered to make that statement. In fact, he insisted on it, waited for hours for a detective to show up, and then made the inculpatory statements. If that's not an intervening event for purposes of the Brown factors, I don't know what would be. And certainly the police conduct here was not flagrant. I suppose reasonable minds could disagree as to whether there was probable cause here or merely reasonable suspicion, but it was, if anything, close, not flagrant. Well, that conversation with, what's her name, the woman? Detective, well, Detective Thickens on April 5th, Your Honor. Well, the other defendant. Oh, Ms. Bean. Yeah, whatever her name. When they had that brief conversation, apparently he was alerting her that maybe it's time they didn't cover for the other guy, I guess. I think that as the court found, Mr. Howard merely told Ms. Bean she didn't have to lie, at which point she confessed. Now, I do want to point out at one point the appellant argued that if not for Mr. Howard's arrest, the police wouldn't have had Ms. Bean's statement. That's not how this analysis works. This court and the Supreme Court have repeatedly rejected a but-for fruit-of-the-poisonous-tree analysis, and as I said, he simply cannot assert her rights. Even if this arrest were improper, which the government asserts it was not, he can't suppress her statement about him. Finally, Your Honor, the police had Mr. Howard's license plate here. He had registered it. It was his car. He had registered it. He registered it with his home address, and the police had recently searched that home because of suspected involvement in a string of cell phone store robberies. After determining that Mr. Howard was related to this cell phone store robbery, they would most certainly have gone back and inevitably discovered the evidence they did discover when they searched it in this case. But the court need not reach these inevitable discovery issues because there was probable cause to believe Howard was a lookout in this case. That's the inevitable issue that we're dealing with. If there are no questions, the government asks that this court affirm the district court. Thank you. All right. Thank you. Mr. Coffey, you had not reserved time. I did not, Your Honor. Well, we thank both counsel and Mr. Coffey. You have the additional thanks of the court for accepting this appointment. Thank you very much, Your Honor. Case is taken under advisement.